Argued and submitted September 8, affirmed December 9, 1981

STATE OF OREGON,
*Petitioner,*
*v.*
EARL GLENN EASTMAN,*
*Respondent.*

(TC 10-79-08891, CA 18018)

STATE OF OREGON,
*Petitioner,*
*v.*
JOHN PETER KOVACH,**
*Respondent.*

(TC 79-30062, CA 17710)
(consolidated on review)
(SC 27826)

637 P2d 609

David B. Frohnmayer, Attorney General, Salem, argued the cause for petitioner. With him on the petition were William F. Gary, Solicitor General, and Richard David Wasserman, Assistant Attorney General, Salem. On the brief were James M. Brown, Attorney General, John R. McCulloch, Jr., Solicitor General, William F. Gary, Deputy Solicitor General, and Robert C. Cannon, Assistant Attorney General, Salem.

Thomas J. Crabtree, Deputy Public Defender, Salem, argued the cause for respondent Eastman. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Robert H. Nagler, Public Defender Services of Lane Co., Inc., Eugene, argued the cause and filed the brief for respondent Kovach.

Before Denecke, Chief Justice, and Tongue, Lent, Linde, Peterson and Tanzer, Justices.

TANZER, J.

Peterson, J., filed a dissenting opinion.

---

\* Appeal from Circuit Court, Lane County. Douglas R. Spencer, Judge. 51 Or App 723, 626 P2d 956 (1981).

\*\* Appeal from District Court, Lane County. Gregory G. Foote, Judge. 51 Or App 739, 625 P2d 1388 (1981).

TANZER, J.

The issue presented by these two consolidated cases is whether a defendant convicted of leaving the scene of an accident without performing statutory duties may be sentenced to pay restitution for damages resulting from the accident. We granted the state's petition for review in this case, along with petitions in *State v. Dillon*, 292 Or 172, 637 P2d 602 (1981) and *State v. Tuma*, 292 Or 194, 637 P2d 614 (1981), in order to clarify the circumstances in which a sentence of restitution is authorized.

Defendant Eastman's car collided with a motorcycle at an intersection. Two people riding the motorcycle were severely injured. Defendant left the scene without giving information to the other driver as required by ORS 483.602. He was convicted of a Class C felony for failure to stop and perform those statutory duties. ORS 483.602(4)(a). The trial court placed defendant on probation and sentenced him to pay $25,180.74 restitution to the injured motorcyclists for their medical bills.

Defendant Kovach's car collided with a parked car. The parked car was damaged and its occupant injured. Defendant left the scene without leaving his name and address. He was convicted of a traffic infraction under ORS 483.604(3) enhanced to a Class A misdemeanor under ORS 484.365(3)(a).[1] The trial court sentenced defendant to serve 15 days in the county jail, to pay a fine and costs, and to pay restitution of $1,649.92 to the owner/occupant of the vehicle for medical expenses, repair bills and car rental expenses.

The Court of Appeals vacated both restitution orders, holding that the restitution statute requires a causal connection between the conduct for which defendant is convicted and the damages the victim suffers. It did not find such a causal connection in either of these cases.

The amounts ordered for restitution could be pecuniary damages, as that term is used in ORS 137.103(2)

---

[1] ORS 483.604(3) has since been amended to make violation a misdemeanor and ORS 484.365(3)(a) no longer applies. Or Laws 1981, ch 818, §§ 12 and 33, and ch 803, § 26.

and they result from the accidents upon which these charging documents are based. They are statutorily permissible in those respects. Under ORS 137.106(1), the remaining question is whether they "result" from the defendants' "criminal activities." That term is defined in ORS 137.103(1):

> " 'Criminal activities' means any offense with respect to which the defendant is convicted or any other criminal conduct admitted by the defendant."

That question requires that we give the term further definition than that in the statute.

■ "Criminal activities" is a broader term than "crime" or "elements of crime," and is intended to communicate a larger meaning. It includes, by definition, "other criminal conduct admitted by the defendant," which would seem to refer to the circumstances of the crime as well as other crimes the defendant might own up to as in a plea bargain situation. Thus, there need not be an exact equivalency between the terms of the criminal statute or the allegations of the charging document under which a defendant is convicted and the acts which cause the special damages.[2] Conceivably, the damage may result from only some of the acts which constitute the crime, for they could be deemed "criminal activities" as long as they were done in the commission of the crime. We do not mean by this opinion to fully construe the term. We mean to recognize its breadth and at the same time to express a limitation that affects these cases.

ORS 483.602, which defendant Eastman violated, stated:

> "(1) The driver of any vehicle involved in an accident which results in injury or death to any person or causes damage to a vehicle which is driven or attended by any person, immediately shall stop such vehicle at the scene of the accident, or as close thereto as possible, and shall remain at the scene of the accident until he has fulfilled the requirements of subsection (2) of this section. Every

---

[2] Similarly, the legislature intended a broad meaning by its definition of "pecuniary damages" to include those recoverable "in a civil action arising from the facts and events constituting the defendant's criminal activities," ORS 137.103(2). *See* the dissent of Joseph, C. J., below. This, however, goes to the definition of pecuniary damages, not to the issue of causation.

such stop shall be made without obstructing traffic more than is necessary.

"(2) The drivers of any vehicles involved in any accident resulting in injury or death to any person or damage to any such vehicles shall:

"(a) Give to the other driver or surviving passenger, or any person not a passenger injured as a result of such accident, his name, address and the registration number of the vehicle which he is driving, and the name and address of any other occupants of such vehicle.

"(b) Upon request and if available, exhibit and give the number of his operator's or chauffeur's license to the persons injured, or to the occupant of or person attending any vehicle damaged.

"(c) Render to any person injured in such accident reasonable assistance, including the conveying or the making of arrangements for the conveying of such person to a physician, surgeon or hospital for medical or surgical treatment, if it is apparent that such treatment is necessary or if such conveying is requested by any injured person.

"(* * * * *)"3

ORS 483.604(1), which defendant Kovach violated, states:

"The driver of any vehicle which collides with any vehicle which is unattended immediately shall stop and [perform specified duties]."

■    Here, the damages for which restitution was ordered resulted from the accidents. They did not result from the defendants' failures to remain, provide information or render reasonable assistance. Under the statute, the accident itself is neither criminal nor an activity. It is rather an event, the existence of which imposes duties upon certain people. Failure to perform those duties is criminal. By way of example, it is analogous to driving with a suspended operator's license. It is not criminal to drive and it is not criminal for one's license to be suspended, but if the latter condition exists, the criminal law prohibits driving and otherwise lawful driving becomes a criminal act. It is also analogous to failure of a person with taxable income in any year to file a tax return for that year. It is not a

---

3 ORS 483.602 has also been revised. The changes are not material to our holding. Or Laws 1981, ch 818, § 11.

criminal activity to have taxable income, but if that fact exists, there is a duty imposed to file a tax return and the performance of that duty is enforced by a criminal sanction. Here, driving a vehicle which is involved in an accident is an element of a crime only in the sense that it is a fact which must be proved under the criminal statute, but it is not an act which defendant performed in the course of committing the crime. It is merely a part of a description in the first sentence of subsection (1) of persons who must stop and perform the duties specified in subsection (2). Activities which were criminal commenced after the accident occurred. Failure of such a person to stop and perform statutory duties arising from the accident would be criminal activity, but the preceding accident is not.

The damages not having resulted from defendants' criminal activities, the restitution orders are unauthorized. The sentences are vacated and new sentences must be imposed.

Affirmed.

**PETERSON, J.,** dissenting.

The resolution of these consolidated cases turns solely on the construction of statutes which, properly applied, point to one result. I will refer to the statutes and the facts in *State v. Eastman,* although a similar statute applies to Kovach.[1] Eastman, while driving a car, collided with a motorcycle, severely injuring two persons. Eastman fled the scene without exchanging information or lending assistance. He was indicted for violating ORS 483.602. The indictment, in summary, states that Eastman (1) operated a motor vehicle, (2) was involved in an accident which resulted in injury to Colin McGregor, and (3) left the scene without (4) giving his name, address, and motor vehicle registration number to Colin McGregor or rendering reasonable assistance to him.

ORS 137.106(1) provides:

"(1) When a person is convicted of criminal activities which have resulted in pecuniary damages, in addition to

---

[1] Defendant Kovach was convicted of violating ORS 483.604, which provides:

"(1) The driver of any vehicle which collides with any vehicle which is unattended immediately shall stop and: [perform specified duties]."

any other sentence it may impose, the court may order that the defendant make restitution to the victim."

The key words in ORS 137.106 are "criminal activities," "pecuniary damages," and "victim." Each of those terms is defined in ORS 137.103.

The legislature defined "criminal activities" to include either (1) "any offense with respect to which the defendant is convicted," or (2) "any other criminal conduct admitted by the defendant." ORS 137.103(1). The latter definition is not involved in either case. We are faced with but one inquiry in determining whether the victim's damages were caused by the defendant's criminal activities: did the damage for which restitution was ordered result from the offense of which the defendant was convicted?

The term "offense" is defined in ORS 161.505 as "* * * conduct for which a sentence to a term of imprisonment or to a fine is provided by any law of this state * * *. An offense is either a crime or a violation or a traffic infraction."

The majority has concluded that restitution is not permissible in this case, reasoning that driving a car which is involved in an accident is not "criminal activity" because:

"* * * [D]riving a vehicle which is involved in an accident is an element of a crime only in the sense that it is a fact which must be proved under the criminal statute, but it is not an act which defendant performed in the course of committing the crime * * *. Activities which were criminal commenced after the accident occurred. Failure of such a person to stop and perform statutory duties arising from the accident would be criminal activity, but the preceding accident is not."

I demur to these statements. The majority is apparently unwilling to allow restitution for damages resulting from an act, the performance of which, by itself, is not a crime because the occurrence of the accident was not "activities which were criminal." In reaching this result, the majority strive mightily to avoid the statutory definition of "criminal activities" contained in ORS 137.106(1)—"any offense with respect to which the defendant is convicted." The first element of the offense is the occurrence of the accident. I would apply the statute according to its plain meaning.

I agree that driving a vehicle that is involved in an accident—even an accident involving injury or death—is not, by itself, a criminal act in the sense that the mere occurrence of the accident is conduct for which imprisonment or a fine can be imposed. But driving a vehicle which is involved in an accident in which there is injury to or death of a person is, indisputably, an element of the "offense to which the defendant [was] convicted." ORS 137.103(1).

Elements of a crime are defined by Black's Law Dictionary (5th ed 1979) as "[t]hose constituent parts of a crime which must be proved by the prosecution to sustain a conviction." The elements of the crime of which Eastman was convicted are these: (1) the defendant was the driver of an automobile which was involved in an accident; (2) the accident resulted in personal injury or damage to another; (3) defendant failed to stop and remain at the scene of the accident until specified duties were performed; (4) the defendant failed to perform one or more of the duties specified by ORS 483.602(2), relating to the giving of information and the rendering of assistance to persons injured in the accident.

The occurrence of the accident is just as much an element of the offense as the failure to render assistance, the failure to give his name and address, or the failure to stop and remain at the scene. The mere fact that the occurrence of the accident, in itself, is not punishable as a criminal act, is really not relevant to whether restitution is permissible.

The statutes leave no question. Restitution is permissible for "* * * all special damages * * * which a person could recover against the defendant in a civil action *arising out of the facts or events* constituting the * * * [offense with respect to which the defendant is convicted] * * *."[2] (Emphasis added.) The offense "with respect to which" Eastman stands convicted is not "leaving the scene of an accident." The offense has four elements. The occurrence of the accident is an element of the offense with respect to

---

[2] The bracketed language is the statutory definition of "criminal activities" to be applied in defining the scope of recoverable "pecuniary damages." ORS 137.103(1) and (3).

which Eastman was convicted; it is also one of the "facts or events constituting the defendant's [offense]." If pecuniary damages result from any element of the *offense* (ORS 137.103(1)), I would hold that restitution is permissible.

On page 188 of the majority opinion it is stated that the term "criminal activities" "is a broader term than 'crime' or 'elements of crime' and *is intended to communicate a larger meaning.*" (Emphasis added.) Yet, on page 190, the majority give the term a restrictive meaning, saying it includes only "activities which were criminal," whatever that means.

Their difficulty in grappling with this case stems from a reluctance to permit restitution for damages which, though they flow from an element of a crime, do not flow from the performance of an act which is by itself a crime.[3]

I say, apply the statute according to its meaning and let the legislature worry about the problem that is bothering the majority.

---

[3] I emphasize that the imposition of restitution for special damages for personal injuries or property damage can only be made if the person in whose favor restitution is ordered "* * * could recover against the defendant in a civil action arising out of the facts or events constituting the defendant's [offense] * * *," ORS 137.103(2), after the defendant has been given an opportunity to be heard, ORS 137.106(3).