Submitted on record and briefs April 4, reversed August 1, 2007

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

AMY LEE SAVAGE,
*Defendant-Appellant.*

Malheur County Circuit Court
05076280C; A130090

164 P3d 1202

Garrett A. Richardson filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Michael C. Livingston, Assistant Attorney General, filed the brief for respondent.

Before Schuman, Presiding Judge, and Edmonds and Ortega, Judges.

SCHUMAN, P. J.

## SCHUMAN, P. J.

Defendant, convicted of child neglect in the second degree, ORS 163.545, and recklessly endangering another person, ORS 163.195, appeals, assigning error to the trial court's denial of her motions for judgment of acquittal. We conclude that there is no evidence from which a rational juror could find beyond a reasonable doubt that defendant's actions were likely to endanger her child and that, even if such a finding were possible, defendant's conduct was not a gross deviation from the standard of care that a reasonable person would observe. *See State v. Lotches*, 331 Or 455, 498, 17 P3d 1045 (2000), *cert den*, 534 US 833 (2001) (describing standard for reviewing denial of motion for judgment of acquittal). We therefore reverse.

The evidence, viewed in the light most favorable to the state and including all reasonable inferences, is extremely sparse—only three witnesses testified, none at any length—and it establishes the following facts. At approximately 9:00 a.m. on a June morning in 2005, a passerby saw a four-year-old boy on a tricycle in the middle of a residential street in Ontario, Oregon. The passerby led the boy out of the street and watched as he rode to a nearby home. She then called the police. At 9:28 a.m., an officer responded and went to the house where, according to the passerby, the boy had gone. The boy answered the officer's knock, opening the door and talking to the officer for four or five minutes until defendant came to the door. The officer testified that defendant appeared as though she had recently been asleep. Those are the facts.

It is worth noting what the evidence did not directly establish: There is no evidence, nor can any be inferred, regarding how much time elapsed between when the child left the house and when the passerby saw him in the street, how long defendant had been asleep when she came to the door, whether she had been asleep when the boy left, whether the boy had ever before left the house unsupervised, what precautions defendant had taken to prevent him from doing so, or how the boy found the tricycle.

After the court denied defendant's motions for a judgment of acquittal, the jury returned verdicts finding defendant guilty of child neglect in the second degree, ORS 163.545, and recklessly endangering another person, ORS 163.195. We begin our analysis with the child neglect charge. ORS 163.545 provides:

> "A person having custody or control of a child under 10 years of age commits the crime of child neglect in the second degree if, with criminal negligence, the person leaves the child unattended in or at any place for such period of time as may be likely to endanger the health or welfare of such child."

ORS 161.085(10) provides that:

> " 'Criminal negligence' or 'criminally negligent,' when used with respect to a result or to a circumstance described by a statute defining an offense, means that a person fails to be aware of a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that the failure to be aware of it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

We have previously described the elements of child neglect by paraphrasing the Supreme Court:

> "In *State v. Goff*, 297 Or 635, 638, 686 P2d 1023 (1984), the court noted that the offense is made up of physical and mental elements. The physical element requires a showing of physical risk—that the child 'was left unattended in or at any place for such a period of time as may be likely to endanger the health or welfare' of the child. ORS 163.545(1). The mental component of the offense requires proof that the risk of the harm described in ORS 163.545(1) was 'substantial and unjustifiable.' ORS 161.085(10). Criminal negligence is established if, given the reason for leaving the child in the setting and the circumstances in which the child was left, the risk of physical harm was such a gross deviation from the standard of care that a reasonable person would observe."

*State v. Paragon*, 195 Or App 265, 270, 97 P3d 691 (2004). Under that standard, the Supreme Court held that a parent

who went to a tavern to drink beer, leaving two young children alone for five hours in a home with "matches lying around" within the children's reach, was guilty of criminal negligence; as the court noted, "Every responsible adult should know that fire is a likely danger when children are left alone with access to matches." *Goff*, 297 Or at 640-41. On the other hand, we have held that a mother was *not* criminally negligent in leaving an infant alone for 45 minutes in the company of her husband, a man she knew had "a history of bad temper and several acts of physical violence," one of which was an assault on another of the couple's children resulting in the child's death. *State v. McLaughlin*, 42 Or App 215, 217, 220-21, 600 P2d 474, *rev den*, 288 Or 173 (1979).

In the present case, based on facts for which there is any evidence and reasonable inferences therefrom (as opposed to speculation), the state proved that defendant was apparently unaware of the risk that, by not securing all of the exits to her house, a four-year-old in her custody would leave the house, find a tricycle, and ride it into the street. We believe that these facts and inferences would allow a rational juror to find that there was a risk that harm to the boy was *possible*; conviction, however, requires proof beyond a reasonable doubt that the risked harm be *likely*. That is a much closer question. It is a question, however, that we need not decide.

Even if we could conclude that a jury could find that defendant's conduct created a risk of likely harm, we could not conclude that being unaware of the risk was a "gross deviation from a standard of care that a reasonable person would observe in the situation." ORS 161.085(10). Simply put, although perfect adults might keep the children under their care either within sight or secured within locked dwellings, those who fail to do so are not for that reason alone grossly deviating from a widely shared, reasonable societal norm. Perhaps defendant was not a perfect parent. But on the facts adduced by the state and reasonable inferences, she was not criminally negligent under ORS 163.545.

The same reasoning leads us to conclude that the court also erred in denying defendant's motion for a judgment of acquittal on the charge of reckless endangerment

under ORS 163.195(1). That statute provides, "A person commits the crime of recklessly endangering another person if the person recklessly engages in conduct which creates a substantial risk of serious physical injury to another person." "Recklessly" is defined in ORS 161.085(9):

> " 'Recklessly,' when used with respect to a result or to a circumstance described by a statute defining an offense, means that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

As we have held, defendant's conduct as proved by the state was not so risky as to constitute a gross deviation from a reasonable standard of care. That conclusion applies whether her conduct resulted from unawareness of the risk (as relevant to the charge of child neglect) or from disregard of it (as relevant to the charge of reckless endangerment).

Reversed.